UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIELLE VLAHOS,<br><br>Plaintiff,<br><br>v.<br><br>ALIGHT SOLUTIONS BENEFIT PAYMENT SERVICES, LLC, JOHNSON CONTROLS, INC., and FIDELITY INVESTMENTS EMPLOYER BENEFITS SERVICES CORP.,<br><br>Defendants. | Civil Action No. 17-cv-12505-ADB |

**MEMORANDUM AND ORDER**
**GRANTING MOTION TO DISMISS**

BURROUGHS, D.J.

On October 26, 2017, Plaintiff Danielle Vlahos filed this action alleging state law claims for breach of contract, breach of implied warranty, negligence, and breach of fiduciary duty against all Defendants for failing to protect her interest in 401(k) retirement funds accrued by her former husband, Mark Vlahos, during their marriage. [ECF No. 1-1]. Currently pending before the Court is Defendants'[1] motion to dismiss. [ECF No. 10]. For the following reasons, the motion to dismiss is GRANTED. Plaintiff, however, may file an amended complaint to state her claims under ERISA within twenty-one days of the entry of this order.

I. **BACKGROUND**

The following facts are drawn from the complaint [ECF No. 1-1 at 4–14] (the "Complaint"), the well-pleaded allegations of which are taken as true for purposes of evaluating Defendants' motion to dismiss. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014).

---

[1] Defendant Fidelity Investments Employer Benefits Services Corp. was apparently never served, see [ECF No. 1 at 4], and has not entered an appearance in this action.

1

From 2002 until approximately 2015, Plaintiff was married to Mr. Vlahos. Compl. ¶ 5; [ECF No. 14 at 9–10]. During their marriage, Mr. Vlahos was employed by Defendant Johnson Controls. Compl. ¶ 5. In connection with his employment, Mr. Vlahos participated in a 401(k) retirement savings plan (the "Plan"), which established a retirement savings account (the "Account"). Id. ¶ 6. The funds in the Account were provided by Defendant Johnson Controls, serviced by Defendant Alight, and maintained by Defendant Fidelity as custodian. Id. ¶¶ 6–8.

On approximately May 15, 2013, Plaintiff filed for divorce from Mr. Vlahos. Id. ¶ 9. On June 12, 2014, the Account had a balance of approximately $125,000.00. Id. ¶ 10. On November 5, 2014, the Account balance was approximately $25,000.00. Id. ¶ 11. Defendants did not provide Plaintiff with prior notice of Mr. Vlahos's $100,000.00 withdrawal from the Account. Id. ¶ 13.

Plaintiff filed this action in the Norfolk County Superior Court on October 11, 2017. [ECF No. 1-1 at 15]. On December 19, 2017, Defendants removed the case to federal court, without objection from Plaintiff, on the basis of federal question jurisdiction. [ECF No. 1]. Defendants asserted that Plaintiff, as a beneficiary of an employee benefits plan controlled by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq. ("ERISA"), alleged state law claims that were preempted by ERISA and thus subject to federal jurisdiction. Id.; see 28 U.S.C. § 1331.

## II. STANDARD OF REVIEW

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). The facts

alleged must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard invites a two-step analysis. Id. "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "At the second step, the court must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotations and citation omitted). "[T]he combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

## III. DISCUSSION

Plaintiff brings state law claims against all Defendants, all premised on the allegation that Defendants failed to protect her interests as a plan beneficiary in the Account during the couple's pending divorce. Defendants argue that Plaintiff's claims for breach of contract, breach of implied warranty, negligence, and breach of fiduciary duty should be dismissed because they are preempted by ERISA.

### A. ERISA Preemption

ERISA expressly preempts all state laws that "relate to any employee benefit plan," including common law claims. 29 U.S.C. § 1144(a); see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 41–42, 48 (1987) (holding that state common law claims relating to ERISA plans are preempted unless they qualify for an exception). The parties do not dispute that the Plan at issue here is an employee benefit plan covered by ERISA. Therefore, the survival of the Complaint

3

hinges on whether Plaintiff's claims "relate to" the Plan and, if so, whether they qualify for an exemption.

A state law relates to an employee benefit plan if it (1) has "a connection with" or (2) makes "reference to such a plan." Cal. Div. of Labor Standards Enforcement v. Dillingham Const., N.A., 519 U.S. 316, 324 (1997) (internal quotation marks and citation omitted). Because Plaintiff alleges common law claims, only the "connection with" test is relevant here. Id. Under this test, the court must look to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (quoting Hampers v. W.R. Grace & Co., 202 F.3d 44, 51 (1st Cir. 2000)). ERISA's objectives include uniformity of administration of ERISA plans and "avoiding inconsistent state regulation of such plans." Id.; see also Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 151 (2001) (holding that state law that removed named beneficiary spouse from former spouse's life insurance policy upon divorce was preempted because "[t]his 'tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction' is exactly the burden ERISA seeks to eliminate" (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990))). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."[2] Aetna Health Inc. v. Davila, 542 U.S. 200, 209–10 (2004) (holding that if entitlement to benefits exists "only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of

---

[2] Section 502(a) of ERISA sets out the civil enforcement mechanism, and "provide[s] in relevant part that '[a] civil action may be brought—(1) by a participant or beneficiary— . . . (B) to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan.'" Rogers v. Rogers & Partners, Architects, Inc., No. 08-cv-11730-NG, 2009 WL 5124652, at *5 (D. Mass. July 27, 2009) (quoting 29 U.S.C. § 1132(a)(1)(B)).

4

ERISA or the plan terms is violated, then the suit [is preempted]"). "There is a strong presumption that common-law claims that intrude on ERISA's civil enforcement regime are preempted." Anthony v. JetDirect Aviation, Inc., 725 F. Supp. 2d 249, 256 (D. Mass. 2010).

In Hampers, 202 F.3d at 53, the First Circuit held that state common law claims were preempted by ERISA because the defendant was "an ERISA employer and fiduciary with responsibility over the administration of the plan" and it was only because of this relationship to the ERISA-governed plan that the defendant could have breached the agreement in the way the plaintiff alleged. Similarly, a judge of this court held that common law claims are preempted "if the relationship between the plaintiff and defendant is based on a plan governed by ERISA." Cuoco v. NYNEX Inc., 722 F. Supp. 884, 886–87 (D. Mass. 1989) (determining there was no preemption because parties' relationship was "not based directly on the . . . plan but on verbal misrepresentations which were not part of the plan").

Here, Plaintiff's claims are premised on her relationship with Defendants, which is established exclusively through the Plan, given Defendants' administration of the plan and her claim that she is "a beneficiary to" the Account. Compl. ¶¶ 54, 58, 62. Because Plaintiff alleges that Defendants acted improperly by distributing funds to Mr. Vlahos in contravention of their obligations to protect her interests "as a beneficiary of the contract" and "as beneficiary to" the Account, id. ¶¶ 16, 54, her claims relate directly to the administration of benefits under the Plan. Therefore, here, as in Hampers, "it is *only* by virtue of [defendant's] status as an ERISA [related entity] with direct control over the administration and operation of the [benefits account] that [defendant] could have breached the . . . agreement in the way [plaintiff] insists that it did." 202 F.3d at 53. Thus, Plaintiff is seeking to enforce her rights under the Plan as a beneficiary, which puts her claims directly within the scope of ERISA preemption. See 29 U.S.C. § 1144(a).

5

## B. Qualified Domestic Relations Order Exemption

Plaintiff argues in her opposition that her claims should survive because she is "ask[ing] the Court to enforce her legal rights under Massachusetts domestic relations laws" and not under the Plan. [ECF No. 14 at 4]. Plaintiff does not cite to a specific provision of the Massachusetts domestic relations laws as the source of her claim to the Account, but she appears to be referring to Mass. Supp. R. Dom. Rel. P. 411, which provides that the filing of a complaint in a divorce action triggers the issuance of an automatic restraining order prohibiting either party from "sell[ing], transfer[ring], encumber[ing], conceal[ing], assign[ing], remov[ing] or in any way dispos[ing] of any property, real or personal, belonging to or acquired by, either party" during the pendency of the action, and Mass. Gen. Laws ch. 208, § 34, which grants the probate court the authority to assign to either spouse "all or any part of the estate of the other, including . . . all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include . . . retirement benefits."[3]

ERISA provides an exception to preemption for orders that are deemed by the ERISA-governed plan administrator to be qualified domestic relations orders ("QDRO").[4] 29 U.S.C. § 1144(b)(7); see Boggs v. Boggs, 520 U.S. 833, 846 (1997) ("QDRO's, unlike domestic relations orders in general, are exempt from . . . ERISA's general pre-emption clause."). A domestic relations order is "qualified" when it meets certain statutory requirements and has been provided to the plan administrators for their evaluation and a determination as to whether it is a QDRO. See Trs. of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 420 (9th Cir.), opinion amended on denial of reh'g, 255 F.3d 661 (9th Cir. 2000) ("Upon obtaining a

---

[3] Plaintiff did not explain, either in the Complaint or in her opposition brief, what percentage of the Account, if any, was awarded to Plaintiff in the divorce proceedings.
[4] Plaintiff did not explicitly raise the QDRO exception as an argument against preemption.

domestic relations order in a state court proceeding, [the party seeking] to establish a right to payment pursuant to that order from an ERISA-covered benefit plan must present the order to the pension plan administrator for a determination of whether it is a QDRO."); see also 29 U.S.C. § 1056(d)(3)(G)(i).

A domestic relations order meets the statutory requirements for a QDRO if the order is issued by a court pursuant to a state domestic relations law, 29 U.S.C. § 1056(d)(3)(B)(ii), and clearly specifies the following:

> (i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order, (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or period to which such order applies, and, (iv) each plan to which such order applies.

Id. § 1056(d)(3)(C). These requirements are intended to "amount to a statutory checklist working to 'spare [an administrator] from litigation-fomenting ambiguities.'" Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 301–02 (2009) (quoting Metro. Life Ins. Co. v. Wheaton, 42 F.3d 1080, 1084 (7th Cir. 1994)).

Some courts have adopted a broad interpretation of the QDRO statutory requirements and found domestic relations orders to be qualified as long as they contain no ambiguity as to the beneficiary and scope of the entitled benefits. See Unicare Life & Health Ins. Co. v. Phanor, 472 F. Supp. 2d 8, 12, 14 (D. Mass. 2007); see also Metro. Life Ins. Co. v. Marsh, 119 F.3d 415, 422 (6th Cir. 1997). In Unicare, the court held that an automatic restraining order, similar to the order at issue here, was a QDRO. 472 F. Supp. 2d at 14. Despite determining that "the state court's [standard automatic restraining order in divorce cases] fails to meet every one of [the statutory] requirements" under a strict interpretation, the court broadly interpreted the QDRO provision of ERISA as requiring only "that a party reading the order be able to understand which specific

people, percentages, periods, and policies it affects." Id. at 12–13. The First Circuit has not spoken directly to the question of whether probate court restraining orders are QDROs, and other Circuits disagree with this broad interpretation of the statutory requirements. See Cent. States, Se. & Sw. Areas Pension Fund v. Howell, 227 F.3d 672, 678 (6th Cir. 2000) (holding that probate court injunction was not a QDRO because, despite naming the parties, the order did not contain the statutorily-required information, including the amount and percentage of payments or the name of the plan); Irwin v. Principal Life Ins. Co., No. 04-cv-4052-JAR, 2005 WL 3470359, at *11 (D. Kan. Dec. 16, 2005) (holding that probate court-issued temporary restraining order did not constitute a QDRO because it failed to meet all statutorily-required elements and was not provided to the plan administrator).

Even when an order is deemed a QDRO, the QDRO exception "does not extend to claims against a plan administrator for improper administration of the plan, which do not 'arise under a QDRO,' but are merely tangential to it." Hogan v. Fid. Invs. Inst. Operations Co., No. 12-cv-11229-DPW, 2013 WL 1330480, at *2 (D. Mass. Mar. 29, 2013) (quoting MacKay v. Estate of Harris, No. 03-cv-150, 2004 WL 356701, at *2–3 (D. Me. Feb. 25, 2004) (holding plaintiff did not ground his claims regarding improper administration of the plan "in any right conferred by the QDRO, but in state statutory and common law," and "ERISA preempts such state law insofar as it conflicts with ERISA provisions governing administration of benefits plans")). Therefore, the operative questions in this case are (1) whether the order qualifies as a QDRO under the statutory definition and (2) whether Plaintiff's claims arise under the QDRO.

Here, Plaintiff does not allege that the automatic restraining order entered in the divorce proceeding was a QDRO, nor do the alleged facts indicate that it meets the statutory requirements. Plaintiff did not provide a complete or official copy of the order. The excerpt

provided as part of an exhibit to Plaintiff's opposition brief does not include the parties' names, and does not identify whether it applies to the Account or any benefits accounts. [ECF No. 14 at 9]; see 29 U.S.C. § 1056(d)(3)(C). Therefore, without additional information regarding how the order impacts the administration of the benefits, it is too ambiguous to meet the statutory definition of a QDRO, even under the broad standard established in Unicare. See Unicare, 472 F. Supp. 2d at 12 (explaining that, at a minimum, a reader must be able to "unambiguously deduce which policies were implicated" for an order to qualify as a QDRO). Additionally, Plaintiff does not allege that Defendants were provided a copy of the order prior to Mr. Vlahos's withdrawal of his retirement funds. Therefore, the allegations do not demonstrate that the order satisfies the QDRO requirements or that the QDRO preemption exception should apply to Plaintiff's claims.

Where a domestic relations order does not satisfy the QDRO requirements, courts will then conduct a typical ERISA preemption analysis. In disputes arising out of inconsistencies between non-qualified domestic relations orders and plan documents, generally plan "documents control" in light of Congress' intent to provide for simplicity and uniformity in ERISA plan administration. Kennedy, 555 U.S. at 304; Iowa Health Sys., Inc. v. Graham, No. 07-cv-4030, 2009 WL 2222780, at *6 (C.D. Ill. July 23, 2009) ("ERISA carries the power to preempt not only state laws, but also the judgments and orders of state courts—even those orders touching on domestic relations, which is an area of law traditionally reserved for the state courts."); see also 29 U.S.C. § 1056(d)(3)(H)(iii). While in Kennedy the court noted that there is no "general rule that a non-QDRO is a nullity in any proceeding that would affect the determination of a beneficiary," it suggested that once a domestic relations order is deemed not qualified, plan administrators should distribute benefits in accordance with plan documents. Kennedy, 555 U.S. at 298.

9

The Plan here clearly states that the plan participant, Mr. Vlahos, "may withdraw all or part of his . . . account balance at any time." [ECF No. 11-1 § 7.2]. The Plan does not make reference to a spousal notice requirement for fund withdrawals. Id. Thus, Defendants were apparently acting in compliance with the terms of the Plan when they permitted Mr. Vlahos to withdraw $100,000.00. See id. To hold otherwise would require Defendants to look outside the plan documents—and act inconsistent with them—in conflict with the intent of Congress to create uniformity in plan administration. See Kennedy, 555 U.S. at 301–04 (holding plan administrator properly complied with ERISA plan procedure and distributed benefits to named beneficiary ex-wife despite conflict with non-QDRO divorce decree in which she waived her rights to such benefits); Egelhoff, 532 U.S. at 150 (holding the state statute "directly conflicts with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents" because the statute requires administrators to look outside the plan to divorce orders to determine who is entitled to benefits); Berlet v. Berlet, No. 98 CIV. 3263 DLC, 1999 WL 47107, at *2 (S.D.N.Y. Feb. 3, 1999) ("A failure to find preemption in the current case would subject the . . . [p]lan to two sets of obligations, one under the state law cause of action outside the plan to pay out plan benefits and a second set of obligations inside the plan under ERISA. As such, the present claim is preempted by ERISA."). Thus, to the extent that Plaintiff asserts that a non-QDRO order issued by a state probate court created a requirement in conflict with Defendants' obligations under ERISA, her state law claims are preempted.[5]

---

[5] Defendants have also argued that Plaintiff failed to exhaust her administrative remedies under the Plan. As Plaintiff's claims are based in state law, failure to exhaust these particular claims under ERISA is not a proper basis for dismissing the present complaint. When Plaintiff files an amended complaint stating claims under ERISA, however, she must demonstrate either that she satisfied the exhaustion requirement or that an exception applies.

## IV. CONCLUSION

Accordingly, Defendants' motion to dismiss [ECF No. 10] is GRANTED. Plaintiff requested leave to amend her complaint if the motion is granted, and accordingly, she may file an amended complaint to state her claims under ERISA within twenty-one days of the entry of this order.

**SO ORDERED.**

August 8, 2018 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE